**LAKE COUNTY AUDITOR,**
Appellant–Respondent,

v.

**BANK CALUMET as Trustee Under Trust No. 4274, Appellee–Petitioner.**

No. 45A03–0206–CV–178.

Court of Appeals of Indiana.

March 19, 2003.

---

Edward R. Hall, Merrillville, IN, Attorney for Appellant.

James R. Bielefeld, Crown Point, IN, Attorney for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, the Auditor of Lake County ("Auditor"), appeals from the trial court's judgment rescinding a certificate of sale issued by the Auditor following a tax sale of certain real property and ordering the Auditor to refund the amount paid for such certificate to Appellee, Bank Calumet, as Trustee under Trust No. 4274 ("the Bank").

We reverse.

On September 13, 2000, the Auditor held a tax sale of real property at which Tim Loveless, the beneficiary of Land Trust No. 4274 at Bank Calumet, was successful in bidding upon real property identified by Key No. 25–47–0078–0005. Thereafter, and upon the Bank's payment of $1,484.12, the Auditor issued a tax sale certificate to the Bank, thereby giving the Bank a lien against such property in that amount. *See* Ind.Code § 6–1.1–24–9(b) (Burns Code Ed. Supp.2002). Prior to the September 13 tax sale, the Bank inspected the property subject to the tax sale and found the property and the building thereon satisfactory for purchase. However, several months following the tax sale the Bank performed a second inspection of the property and discovered that the building upon the property had been demolished by an unknown party, presumably the City of Gary, thereby apparently leaving the property without any real significant value.

On June 7, 2001, after discovering that the building had been demolished, the Bank filed a "Verified Petition for Rescission of Tax Sale Certificate and for Refund" in the Lake Circuit Court.[1] On June 14, 2001, the Auditor filed a motion to dismiss the Bank's petition, asserting that it failed to state a claim upon which relief could be granted. *See* Ind. Trial Rule 12(B)(6). Following a hearing on August 31, 2001, the trial court denied the Auditor's motion to dismiss and set a hearing for March 8, 2002, on the Bank's petition. On April 2, 2002, the trial court, finding that "it has the power to order the rescission of the sale and issuance of said tax certificate pursuant to its inherent equitable powers," granted the Bank its requested relief. Appendix at 3.

Upon appeal, the Auditor challenges the trial court's order, asserting that the trial court erred in setting aside a valid tax sale by rescinding the certificate of sale and by ordering a refund because there is no stat-

---

1. The redemption period for the property purchased by the Bank was one year. *See* Ind. Code § 6–1.1–25–4(a)(1) (Burns Code Ed. Supp.2002). Thus, the redemption period had not yet expired when the Bank filed its petition for rescission of the tax sale certificate and a refund.

utory authority to do so under the facts of this particular case. The Bank responds that the relief granted by the trial court was proper in that it was within the court's equitable powers to order rescission and a refund.

■ We first observe that real property tax sales are governed by statute. *See* Ind.Code §§ 6–1.1–24, 6–1.1–25. The trial court, however, granted the Bank's request for relief pursuant to its equitable powers. As a general proposition, a trial court has full discretion to fashion equitable remedies which are complete and fair to all parties involved. *Porter v. Bankers Trust Co. of California, N.A.*, 773 N.E.2d 901, 908 (Ind.Ct.App.2002). However, where substantial justice can be accomplished by following the law, and the parties' actions are clearly governed by rules of law, equity follows the law. *Id.*

■ Here, we are presented with the situation where, because of a change in circumstances, the tax sale purchaser does not want to convert his tax sale certificate into a tax deed, but instead seeks to have the tax sale certificate rescinded and his money refunded. As far back as *State ex rel. McKenzie v. Casteel*, 110 Ind. 174, 179, 11 N.E. 219, 222 (1887), Indiana appellate courts have recognized that the doctrine of *caveat emptor* applies to tax sales in its fullest force, that is, a purchaser at a tax sale buys at his own risk. *See also City of Logansport v. Humphrey*, 84 Ind. 467 (1882). If the sale proves unsatisfactory to the purchaser, the purchaser, in absence of an express statute, may not recover from the county the money paid by him. *See McKenzie*, 110 Ind. at 179, 11 N.E. at 222. Generally, the purchaser assumes all risks and his payment is regarded as voluntary. *Id.* In actions brought to recover money paid on the purchase of property at a tax sale, the party requesting a refund must do so pursuant to a statute providing that it shall be paid back to him. *Id.* Thus, as equity follows the law, the Bank was required to show a statute which entitled it to a refund.

Within the statutory scheme for tax sales, there are three provisions which permit a tax sale purchaser to obtain a refund of part or all of the money paid for the tax sale certificate. Pursuant to Ind.Code § 6–1.1–25–4.6 (Burns Code Ed. Repl. 2001):

"(d) ... if the court refuses to enter an order directing the county auditor to execute and deliver the tax deed because of the failure of the purchaser ... to fulfill the requirements of this section, the court shall order the return of the purchase price minus a penalty of twenty-five percent (25%) of the amount of the purchase price...."

Also, under subsection (e) of the same statute, if the purchaser made a bona fide attempt to comply with the requirements of the statute, but failed, and because of such failure the trial court refused to enter an order directing the county auditor to execute and deliver the tax deed, the county auditor shall refund the purchase money plus six percent interest. The trigger for the refunds specified under subsections (d) and (e) is the trial court's refusal to enter an order directing the auditor to issue the tax deed because of the purchaser's failure to comply with the requirements of the statute. That a trial court must refuse to enter an order presupposes that the purchaser has requested an order by filing a petition under I.C. § 6–1.1–25–4.6(a). Thus, to be entitled to a refund under this section, the purchaser must first file a petition for issuance of a deed with the trial court.

Under the facts of the case before us, the Bank has not filed a petition with the court requesting an order directing the auditor to issue a tax deed. Indeed, as the

period of redemption had not yet expired when the Bank petitioned for a refund, the Bank was not even permitted to file such a petition. *See* I.C. § 6–1.1–25–4.6(a) (purchaser may file a verified petition "[a]fter the expiration of the redemption period"). As the court has not refused to enter an order directing the auditor to issue the tax deed, the provisions for refunds under the statute are not applicable to the case before us. *But see Board of Comm'rs of the County of Vanderburgh v. Mundy*, 783 N.E.2d 742 (Ind.Ct.App.2003) (holding that under I.C. § 6–1.1–25–4.6(d), the purchaser at a tax sale was entitled to a refund less a twenty-five percent penalty even though the purchaser had not yet petitioned the court for an order directing the county auditor to issue and deliver the tax deed).[2]

There are two other statutes which provide for refunds to a tax sale purchaser. Under Ind.Code § 6–1.1–25–10 (Burns Code Ed. Repl.2001):

"If, before the court issues an order directing the county auditor to issue a tax deed to a tract or item of real property sold under IC 6–1.1–24, it is found by the county auditor and the county treasurer that the sale *was invalid*, the county auditor shall refund the purchase money and all taxes and special assessments on the property paid by the purchaser ... after the tax sale plus six percent (6%) interest per annum...."

Indiana Code § 6–1.1–25–11(a) (Burns Code Ed. Repl.2001), provides that:

"Subsequent to the issuance of the order directing the county auditor to issue a tax deed to real property sold under IC 6–1.1–24, a county auditor shall refund the purchase money plus six percent (6%) interest per annum from the county treasury to the purchaser ... if it is found by the court that entered the order for the tax deed that:

(1) the real property described in the deed was not subject to the taxes for which it was sold;

(2) the delinquent taxes or special assessments for which the real property was sold were properly paid before the sale; or

(3) the legal description of the real property in the tax deed is void for uncertainty."

Here, it is not alleged that the tax sale was in any way invalid, thus I.C. § 6–1.1–25–10 is inapplicable, and as there has been no order directing the county auditor to issue a tax deed, I.C. § 6–1.1–25–11 is also inapplicable.[3] As there is not a statute which provides that the Bank is entitled to a refund, the Bank may not recover the money paid for the tax sale certificate.

The Bank, however, argues that the trial court properly exercised its equitable powers in granting the relief it requested. In support of its position, the Bank directs us to *Atkins v. Niermeier*, 671 N.E.2d 155 (Ind.Ct.App.1996). We find the facts in *Atkins* distinguishable from the present case.

In *Atkins*, a panel of this court approved of the trial court's exercise of its equitable

---

**2.** To the extent that *Mundy* is inconsistent with this opinion, we decline to follow it.

**3.** Indiana Code §§ 6–1.1–25–10 and 6–1.1–25–11 as above quoted became effective July 1, 2001, after the pleadings were filed in this litigation but before the hearing and ruling upon the Auditor's motion to dismiss. These statutes as they previously read triggered the refund obligation upon the execution of a deed rather than from issuance of an order for the auditor to issue a deed. Be that as it may, the amendment to the statute is of no moment because under the facts before us there was neither a deed executed nor an order to do so.

powers in the case of a tax sale purchaser who sought relief not covered by any statute. There, the purchaser at a tax sale relinquished his tax sale certificate to the county auditor after the county auditor informed him that the "owner" had redeemed the property. As it was later discovered, the person who had redeemed the property was not the "owner" of the property. Thus, the purchaser requested the return of the tax sale certificate as well as a 60–day extension of the time period for redemption of the real estate so that he could provide notice pursuant to the tax sale statutes. The trial court granted the relief requested. Upon appeal, this court concluded that, as the purchaser acted without knowledge of the material facts in reliance upon directions from the county auditor, the purchaser did not voluntarily relinquish his tax sale certificate. *Id.* at 158. Thus, this court held that it was within the trial court's equitable powers to reissue the tax sale certificate, thereby reinstating the purchaser's lien against the property. *Id.*

An important difference between *Atkins* and the case at hand is that in *Atkins* the doctrine of *caveat emptor* did not preclude the exercise of equitable powers because there the purchaser requested that a certificate be reissued so that he could follow through with the tax sale procedures in order to obtain a tax deed to the property.

*Caveat emptor* does not encompass the situation where a purchaser relies upon erroneous information from the county auditor. Further, the doctrine would hardly be invoked against a purchaser who wished to comply with the statutory requirements and complete the tax sale.

 *Caveat emptor*, however, does preclude the exercise of equitable powers in the case at hand where the purchaser wants to avoid an otherwise valid tax sale and obtain a refund because of a change in circumstances making the purchase of the property undesirable.[4] In the context of a tax sale, *caveat emptor* means that the purchaser assumes the risk of anything which might occur, other than those circumstances under which a statute expressly provides a remedy, between the issuance of the tax sale certificate and issuance of the tax deed. If it were otherwise, purchasers could recover the money paid under any set of circumstances if the court finds a refund to be equitable. Indeed, it would completely eviscerate the doctrine of *caveat emptor* to permit a court to exercise its equitable powers to grant a refund not provided by statute because of a change in circumstances, the risk of which the purchaser at a tax sale assumes. "It has never been the policy of the law to insure to purchasers at tax sales a return of their money, and thus relieve them of all risk, and render it unnecessary for them to exercise care and diligence in buying."

---

4. Upon review of the record we learn that the Bank established only that it inspected the property sometime prior to the sale and that within months following the sale, a second inspection revealed that the structure upon the property had been demolished. We recognize that the facts as presented by the Bank and as apparently accepted by the trial court lead to the inference that the structure upon the property was in existence at the time of the tax sale and was demolished sometime thereafter. We note, however, that the contrary inference, i.e. that the structure was demolished prior to the sale but was only discovered after the sale, is equally plausible. Indeed, had the Bank first inspected the property months, or for that matter even weeks, prior to the sale, it may have been discovered that the structure had already been demolished. In such case, there would be no doubt that the doctrine of *caveat emptor* would preclude the Bank from receiving a refund of the money paid. Be that as it may, we address the arguments upon appeal as if the structure upon the property was demolished following the tax sale and issuance of the tax sale certificate.

*McKenzie,* 110 Ind. at 184, 11 N.E. at 224. Here, we must follow the firmly-settled general rule that a purchaser at a tax sale may not, in the absence of an express statute, recover the money paid. *See McKenzie,* 110 Ind. at 179, 11 N.E. at 222.

As the Bank cannot show how the facts of this case fall within any of the statutory provisions which provide for refunds to tax sale purchasers, the Bank is not entitled to a refund of the money it paid at the tax sale. The doctrine of *caveat emptor* and the general rule that there must be a statute which provides for a refund precludes the court's exercise of its equitable powers under the facts of this case. Therefore, we conclude that the trial court erred in exercising its equitable powers to rescind the tax sale certificate and to order the Auditor to refund to the Bank the money paid.[5]

The judgment of the trial court is reversed.

SHARPNACK and KIRSCH, JJ., concur.

---

**5.** The General Assembly is free to afford relief to a tax sale purchaser when, through no fault of the purchaser, the nature or extent of the property purchased has been altered by a third party between the time of the tax sale and expiration of the redemption period.